UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE A. JULIAN,

          Plaintiff,          Civil Action No. 22-12525

v.          Sean F. Cox
          United States District Judge

GRETCHEN WHITMER, *et al.*,          David R. Grand
          United States Magistrate Judge

          Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 24, 34)

On October 11, 2023, and November 30, 2023, defendants Heidi Washington, Sherman Campbell, Noah Nagy, and Gretchen Whitmer (collectively "Defendants") filed Motions for Summary Judgment on the Basis of Exhaustion. (ECF Nos. 24, 34). On December 11, 2023, and December 18, 2023, plaintiff Eddie Julian[1] ("Julian"), who currently is incarcerated, filed a response and addendum, respectively, to these motions. (ECF Nos. 36, 38). Defendants filed a reply on December 18, 2023. (ECF No. 37). Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 12).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal

---

[1] Bruce H. Butler was also a named plaintiff in this action; however, on November 17, 2022, the Honorable Sean F. Cox issued an Opinion and Order dismissing Butler's claims. (ECF No. 5).

issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.   **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motions for Summary Judgment **(ECF Nos. 24, 34)** be **GRANTED**.

II.  **REPORT**

   A.   **Background**

Julian is a Michigan Department of Corrections ("MDOC") prisoner and is currently confined at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan. He brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging in his complaint[2] violations of his Eighth and Fourteenth Amendment rights based on ARF's response to the COVID-19 pandemic and his resulting bout with that illness.[3] (ECF No. 1).

---

[2] On January 11, 2024, after briefing on Defendants' dispositive motions was complete, Julian filed an amended complaint. (ECF No. 39). Defendants moved to strike Julian's amended complaint, arguing that it violates Fed. R. Civ. P. 15(a), since Julian was not entitled to amend as of right and failed to seek leave of court before doing so. (ECF No. 40). Julian filed a response on February 23, 2024 (ECF No. 41), and Defendants filed a reply on March 5, 2024 (ECF No. 42). On today's date, the Court issued an Order Granting Defendants' Motion to Strike. (ECF No. 43). Thus, the operative complaint in this case remains Julian's original complaint. (ECF No. 1).

[3] Julian also appears to bring a separate, unrelated claim against individuals other than Defendants regarding the alleged denial of prescribed medication and a knee brace. Specifically, he alleges that, in or around March of 2017, he was approved for a "Neoprene Knee" brace and "Elavil 12mg nightly," and that this approval was renewed on March 12, 2018, by the Pain Management Committee ("PMC"). (ECF No. 1, PageID.54). Julian claims that "Doctor Stallman" and the PMC deliberately failed to notify him of the approval/renewal of these items and that, as a result, he has been "suffering excruciating (daily) pain." (*Id.*, PageID.54-55). Julian further alleges that Physician Assistant R. Jindal (of ARF) and Nurse Practitioner "Ayesha" (who worked at the Handlon Correctional Facility) were aware of these prescriptions and deliberately ignored them. (*Id.*, PageID.56-60). However, none of these individuals or the PMC are named as defendants in the instant action, and Julian's claims regarding this issue are wholly unrelated to the main claims

In his complaint, Julian alleges that he is "medically vulnerable" because of his age and various medical conditions, and that medically vulnerable people are at "double or triple" the risk of experiencing more severe COVID-19 symptoms, as compared to the general population. (*Id.*, PageID.23-24, 33). He further alleges that, for such medically vulnerable inmates, the only reasonable responses to the dangers presented by the COVID-19 pandemic were "immediate Commutation, Parole, Early Release on a Tether, Temporary Home Confinement, Contractual Agreement(s) With members of the public, Medical Releases, Bond(s) etc.…" (*Id.*, PageID.23).[4]

Julian further alleges that, rather than take any of these approaches, Defendants "created and established a MEDICAL QUARANTINE as a response to the 'widespread epidemic outbreak' at [ARF]." (*Id.*). Apparently against his wishes, Julian was placed in Medical Quarantine, where he alleges Defendants made conscious decisions to take no extra precautions to ensure the health and safety of such medically vulnerable inmates.

---

he asserts in his complaint – namely, that Defendants' handling of issues arising out of COVID-19 pandemic violated his constitutional rights. Courts have long recognized that a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." *Summers v. Brown*, No. 1:23-cv-1050, 2023 WL 7873149, at *7 (W.D. Mich. Nov. 16, 2023) (internal quotations omitted). In other words, "'Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits ….'" *Id.* at *8 (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Here, then, Julian's allegations regarding the alleged deprivation of prescribed medication and a knee brace are not properly before the Court and will not be considered, as they are asserted against individuals other than Defendants and are wholly unrelated to Julian's primary claims, which arise out of the COVID-19 pandemic. Should Julian wish to pursue a claim regarding the alleged deprivation of medication and/or a knee brace, he must file a new lawsuit, naming the proper individuals as defendants.

[4] In quoting from Julian's filings, the Court will do so verbatim, including misspellings, fonts, and improper capitalization or punctuation, to ensure statements are not taken out of context.

3

(*Id.*, PageID.23, 45, 48).  Specifically, Julian alleges that, while in Medical Quarantine, it was not possible for him to practice social distancing; no effort was made to avoid "mass gatherings," such as at mealtimes; COVID-positive and COVID-negative inmates were allowed to roam freely through the halls; and surfaces were not cleaned and/or disinfected on a regular basis.  (*Id.*, PageID.40-41, 50, 66).  Julian asserts that, as a direct result of being forced into Medical Quarantine, and the procedures employed in that unit, he contracted COVID-19.  (*Id.*, PageID.49, 53, 71).  He claims this illness caused him to suffer shortness of breath, diarrhea, nausea, headaches, loss of taste and smell, extreme fatigue, muscle aches, bouts of depression and anxiety, pain in his feet, memory loss, and daily confusion.  (*Id.*, PageID.41, 49).  Based on these allegations, he seeks monetary, declaratory, and any other appropriate relief.  (*Id.*, PageID.70-73).

Notably, Julian acknowledges in his complaint that he did not file any grievances regarding these claims because the applicable grievance procedure "***states no authority to provide an effective method of seeking redress for alleged violations of any procedures or policies relating and/or pertaining to COVID-19 virus where death and/or severe illness and pain are daily, immediate and permanent***[.]"  (*Id.*, PageID.38).  Defendants now move for summary judgment, arguing that Julian failed to properly exhaust his administrative remedies against them before filing the instant lawsuit.

**B.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

4

*Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.  Analysis**

In their motion, Defendants argue that summary judgment is warranted on Julian's claims against them because Julian failed to properly exhaust his administrative remedies,

5

as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF Nos. 24, 34). The Court agrees.

1. *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement[5] until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885,

---

[5] Julian attempts to circumvent the PLRA's exhaustion requirement by arguing that he is challenging "the fact or extent, 'rather than the conditions' of the confinement." (ECF No. 1, PageID.35). Julian's argument lacks merit as it conflates the nature of his claim with the relief he seeks. While Julian does argue that he should have been released from the prison setting, *see supra* at 3, he sought that relief not in conjunction with a challenge to the validity of his custodial sentence, but with respect to a challenge about the conditions of his confinement. Specifically, Julian is claiming that he contracted COVID-19 as a result of his placement in Medical Quarantine and the unsatisfactory actions taken to prevent the spread of the virus in that unit. Thus, regardless of the relief Julian seeks, his *claim* challenges his "conditions of confinement," and the PLRA's exhaustion requirements apply. *See, e.g., Mescall v. Hemingway*, No. 20-11110, 2020 WL 4584028, at *3 (E.D. Mich. Aug. 10, 2020) (allegations of insufficient testing, failure to wear face masks, insufficient social distancing, and insufficient sanitary equipment challenged the conditions – not the fact or extent – of confinement).

888 (6th Cir. 2009).

### 2. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 24-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id*. at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

### 3. Julian Fails to Raise a Genuine Issue of Material Fact as to Whether He Properly Exhausted his Claims Against Defendants

In their motions, Defendants argue that Julian did not properly exhaust his claims against them because he did not pursue, through Step III, any grievances against them

7

arising out of his allegations regarding ARF's COVID-19 response. (ECF No. 24, PageID.218-19; ECF No. 34, PageID.291-92). In support of their motions, Defendants provide a copy of Julian's "MDOC Prisoner Step III Grievance Report," as well as underlying documentation, which together show that, prior to the filing of his complaint in this case, Julian exhausted only two grievances arising out of ARF, neither of which named Defendants nor challenged the MDOC's or ARF's response to the COVID-19 pandemic. (ECF No. 24-3). Defendants argue, then, that the claims asserted by Julian in his complaint are not properly exhausted under the MDOC's policies and procedures. (ECF No. 24, PageID.226-28) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

Julian does not dispute that he did not file *any* grievance related to his instant claims, much less pursue such a grievance through Step III of the grievance process. (ECF No. 36). Indeed, Julian says very little regarding Defendants' exhaustion argument.[6] His entire argument regarding exhaustion consists of two paragraphs, which read as follows:

> The PLRA requires prisons to exhaust all administrative remedies before filling suit under federal law. 42 U.S.C. § 1997e(a). The Supreme Court "underscore[d]" the PLRS's "built-in exception to the exhaustion requirement "**A prisoner need not exhaust remedies if they are not 'available**.'" [*Ross v. Blake*, 578 U.S. 632, 636 (2016)]. See page 10 through 12 of Complaint. …
>
> Each of the defendant(s) who violated the Eighth Amendment regarding plaintiff Julian-Bey [] ("Medically-Vulnerable") with only one remedy to save [t]heir life (but was unavailable to file a

---

[6] Julian spends the vast majority of his response to Defendants' dispositive motions continuing to level baseless accusations of fraud upon the Court. (ECF No. 36, PageID.300-04). As this Court recognized in a prior Report and Recommendation (ECF No. 27), however, there simply is no evidence of the purported "fraud," "egregious misconduct," or "flagrant deceit" of which Julian continues to complain (ECF No. 36, PageID.301).

grievance); a grievance was not required to be filed.

(*Id.*, PageID.305). Turning to pages 10 through 12 of Julian's complaint, it appears he is arguing that the MDOC's grievance procedure was unavailable to him because it:

> (1) "***states no authority to provide an effective method of seeking redress for alleged violations of any procedures or policies relating and/or pertaining to COVID-19 virus where death and/or severe illness and pain are daily, immediate and permanent***"; and

> (2) "***states no authority to provide an effective method of seeking redress for 'Medically Vulnerable' inmates dwelling (living) in a facility that is existing and operating in direct violation of the … Eighth and Fourteenth Amendment of Constitution, e.g., operating under active 'Imminent danger', 'substantial risk of serious harm', 'daily life-threatening circumstances etc.***" ….

(ECF No. 1, PageID.38). Thus, Julian appears to be arguing that, under the circumstances, the MDOC's grievance procedure was "unavailable" to him.

As Julian recognizes, the United States Supreme Court has reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642. Courts have recognized that, in some circumstances, "although completing [all steps of the grievance process] is a sufficient condition, it is not always a necessary one." *Palmer v. Flore*, 3 F. Supp. 2d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances).

Here, Julian has not raised a genuine issue of material fact as to whether the

9

grievance process was "unavailable" to him. To the extent Julian claims that the MDOC's grievance procedure does not "provide an effective method of seeking redress" for violations of policies and procedures regarding COVID-19 – particularly as applied to "Medically Vulnerable" inmates" (ECF No. 1, PageID.38) – such a conclusory allegation is wholly insufficient. Indeed, in *Moses v. Campbell*, No. 20-13366, 2022 WL 2805145, at *5-6 (E.D. Mich. July 18, 2022), the court considered a similar case, in which the plaintiff alleged violations of his Eighth Amendment rights based on ARF's alleged inadequate response to the COVID-19 pandemic. In that case, too, the prisoner plaintiff challenged the COVID protocols in place, claiming that an inmate from a "quarantined unit with active COVID cases" was moved to his unit, then tested positive for the virus just a few days later. *Id.* at *1. The plaintiff thus alleged that he was "unnecessarily exposed to COVID-19" while at ARF, contracted the virus, and suffered physical and emotional harm as a result. *Id.* The defendants argued that summary judgment was appropriate on exhaustion grounds because Moses had not filed any grievances regarding his claims.

As Julian does in this case (ECF No. 1, PageID.39), Moses pointed to *Valentine v. Collier*, 140 S. Ct. 1598 (2020), in support of his argument that the novelty and seriousness of the COVID-19 pandemic somehow rendered the MDOC grievance process futile. Specifically, Julian relies on a portion of Justice Sotomayor's statement in *Valentine*, respecting the Supreme Court's denial of an application to vacate a stay of an injunction but stating, in relevant part, that "if a plaintiff has established that the procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid-19, the procedures may be 'unavailable' to meet the plaintiff's purposes." *Id.* at 1601-02. But, to

10

the extent this statement would apply in Julian's case, Julian has presented no argument – much less evidence – establishing that the MDOC's three-step grievance procedure was "utterly incapable" of responding to his claims. *See Alexander*, 576 F.3d at 558 (requiring "an affirmative showing with proper evidence" to defeat summary judgment). And, as explained above, this Court has previously held that, in cases challenging the effectiveness or propriety of COVID-19 safety protocols, a prisoner plaintiff's own "subjective belief" that the grievance process would be ineffective or futile is insufficient to excuse the plaintiff from the exhaustion requirement. *See Moses*, 2022 WL 2805145, at *6; *see also Stevens v. Potila*, No. 14-10863, 2015 WL 1245889, at *3 (E.D. Mich. Mar. 18, 2015) (citing *Napier v. Laurel Cty., Ky.*, 636 F3d 218, 222 (6th Cir. 2011) ("To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner [] believes the procedure to be ineffectual or futile.") (internal quotation marks and citations omitted)).

In this case, then, as in *Moses*, regardless of how Julian seeks to label or characterize his claim, it fundamentally is a claim challenging *his* conditions of confinement (i.e., his placement in Medical Quarantine and the conditions in that unit), which resulted in *his* health allegedly being placed in jeopardy. Such a claim must be exhausted through the MDOC's three-step grievance process, *see Moses*, 2022 WL 2805145, at *7, and it is undisputed that Julian did not do so. Moreover, Julian has not established a genuine issue of material fact as to whether the grievance process was unavailable to him, and there is thus no basis for excusing his failure to exhaust his administrative remedies. As such,

11

Defendants' motions for summary judgment on exhaustion grounds should be granted. *See, e.g., Green v. Douglas*, No. 22-10101, 2022 WL 3215004, at *3-4 (E.D. Mich. Aug. 9, 2022) (granting summary judgment in favor of defendants where plaintiff did not exhaust his administrative remedies through Step III); *Moses*, 2022 WL 2805145, at *5-6 (same).

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motions for Summary Judgment on the Basis of Exhaustion **(ECF Nos. 24, 34)** be **GRANTED**.

Dated: March 18, 2024                                       s/David R. Grand
Ann Arbor, Michigan                                         DAVID R. GRAND
                                                            United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 18, 2024.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager